PAUL A. BONIN, Judge.
h Michael Hampton was charged by bill of information with indecent behavior with a juvenile under seventeen years old. See La. R.S. 14:81 A(l). The jury returned a verdict of guilty of indecent behavior with a juvenile under thirteen years old. See La. R.S. 14:81 H(2). The trial judge sentenced Mr. Hampton under the provisions of Subsection 81 H(2) to five years of imprisonment, two years of which must be served without the benefit of probation, parole, or suspension of sentence. Mr. Hampton appeals his conviction but not his sentence.
Mr. Hampton asserts three assignments of error. He first complains about the qualification of a pediatrician as an expert in the fields of child abuse and delayed reporting of abuse. Mr. Hampton next contends that the pediatrician, once qualified, was allowed to give opinion testimony on delayed reporting beyond the scope of that permitted by State v. Foret.[1] Finally, Mr. Hampton argues that his motion for a mistrial was improperly denied despite the prosecutor repeatedly making comments, such as “thankfully we are not here for rape,” during closing arguments.
|2We have reviewed each of Mr. Hampton’s assignments under an abuse-of-discretion standard, which is highly deferential to rulings made by the trial judge. *243 Because none of these rulings were based “on an erroneous view of the law or a clearly erroneous assessment of the evidence” [2] and each choice was permissible, we find that the trial judge did not abuse her discretion in any of the three complained-of rulings.
We did, however, identify a possible error patent in the discrepancy between the offense charged and the crime for which the jury returned a verdict. See La. C.Cr.P. art. 920(2).[3] In response, both the district attorney and Mr. Hampton’s appellate counsel note that the jury’s verdict, finding that indecent behavior was committed with a juvenile under the age of thirteen years, necessarily establishes that the offense was committed with a juvenile under the age of seventeen years; thus, there is no prejudice mandating retrial. The district attorney claims that the proper remedy is to vacate the sentence and remand for resentencing pursuant to Subsection 81 H(l); the defendant agrees that, on remand, Mr. Hampton should be resen-tenced under the less stringent provisions of Subsection 81 H(l).
We accordingly affirm Mr. Hampton’s conviction. We, however, vacate the sentence imposed and remand for resentenc-ing under the provisions of Subsection 81 H(l). We explain our decision in greater detail below.
[[Image here]]
We first analyze Mr. Hampton’s argument that the trial judge improperly qualified Jamie Jackson, M.D., as an expert in the area of child sexual abuse and delayed disclosure. Mr. Hampton does not challenge Dr. Jackson’s qualification as an expert in the field of pediatrics.
A
At the outset, we note that Mr. Hampton did not seek a particularized hearing to test the reliability of expert testimony on delayed disclosure. See Dauberb v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). See, e.g., State v. Chauvin, 02-1188, p. 18 (La.5/20/03), 846 So.2d 697, 709. Mr. Hampton also did not proffer countervailing medical testimony either to the judge as the gatekeeper for opinion testimony or to the jury as the trier of fact. There is considerable skepticism, if not downright distrust, about the scientific reliability of delayed disclosure studies in both the medical and legal fields. See Margaret H. Shiu, Unwarranted Skepticism: The Federal Courts’s Treatment of Child Sexual Abuse Accommodation Syndrome, Southern California Interdisciplinary Law Journal, 18:651 (2009). Thus, the only evidentiary basis for the trial judge’s ruling was the uncontroverted testimony of Dr. Jackson.
Consequently, in reviewing this assignment of error as well as another in Part II, post, we are constrained by the prece-dential rules for handling this difficult issue set forth in State v. Foret, 628 So.2d 1116 (La.1993). The Supreme Court explained that the trial judge in Foret, as here, had not conducted an evidentiary *244 shearing — now referred to.as a “Daubert hearing” — in which he could exercise his gatekeeper function and determine the admissibility of expert evidence. See id. at 1131. As a result, the Supreme Court noted that its “analysis of the issues is based on consideration of the information gleaned from prior reported cases and published literature on the subject matter.” Id. Thus, the rules or directives announced in Foret are “not necessarily static.” Id.
The Supreme Court explained that the rules announced in Foret would not “preclude consideration by a trial court, performing its gatekeeping function via an evidentiary hearing, of the admissibility of psychological testimony in sexual abuse cases for certain limited purposes, based on current evidence bearing on the reliability and accuracy of this type of evidence.” Id. (emphasis added). Conversely and importantly for our purposes, we are bound by the Foret rules as Mr. Hampton also failed to insist on an eviden-tiary hearing to present any updated or current evidence “bearing on the reliability and accuracy” of delayed reporting evidence.
As will be more fully discussed in Part II-B, post, Fóret allows for limited expert testimony on delayed disclosure or delayed reporting. See id. at 1129-1130. Thus, we first consider whether Dr. Jackson, having her credentials challenged with respect to expertise in child abuse and delayed disclosure, was properly qualified as an expert witness by the trial judge.
_kB
In this particular case, the parties stipulated that any alleged lewd or lascivious act, proscribed by the statute, was not “upon the person” of the child, but rather “in the presence of ... [the] child.” See La. R.S. 14:81 A(l). Thus, there was no expectation that a physical-medical examination would result in any positive findings of sexual abuse as the child had not been physically injured. More importantly, the child in this case, who was under the age of thirteen years old and a relative of Mr. Hampton, first reported that Mr. Hampton’s actions began to occur more than three years prior to her reporting the incidents. Thus, there was an expectation that her delayed disclosure might require explanation not within the ken of the ordinary juror.
If specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact at issue, “a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.” La. C.E. art. 702. “A combination of specialized training, work experience, and practical application of the expert’s knowledge can combine to demonstrate that a person is an expert.” State v. Friday, 10-2309, p. 24 (La.App. 1 Cir. 6/17/11), 73 So.3d 913, 930. We may also consider whether a witness has previously been qualified as an expert. See id.
Dr. Jackson earned an undergraduate degree in psychology from the University of Florida. She completed her medical school studies at the American | ^University in the Caribbean and then pursued her three-year pediatric residency at LSU Medical School along with a one-year fellowship in forensic pediatric medicine at Children’s Hospital through LSU Medical School.
Dr. Jackson is licensed to practice medicine in Louisiana and is a board-certified pediatrician. Since the completion of her fellowship, she has been an attending physician for child abuse pediatrics at Children’s Hospital as well as a clinical assistant professor of pediatrics at LSU. She *245 has attended numerous professional conferences and made presentations at them. She belongs to the Section on Child Abuse and Neglect of the American Academy of Pediatrics and is also a member of the American Professional Society on the Abuse of Children. At the time of her testimony, she was not yet eligible to become certified in the subspecialty of child sexual abuse. She estimated, however, that she had treated over 700 victims of child sexual abuse.
Dr. Jackson has testified as an expert ■witness in courts in the Metropolitan New Orleans area, Livingston and Terrebonne Parishes, as well as the State of Texas. She is generally qualified as an expert in child abuse pediatrics and has never been denied qualification as an expert witness.
In addition to the foregoing, which was developed in the predicate to her qualification, we also consider additional details which were developed during Dr. Jackson’s trial testimony. These include that she has received training in delayed disclosure as part of her specialty in child abuse and has done extensive reading on |7the subject as well. Dr. Jackson, however, is not a psychiatrist and has no specialized training in psychiatry.
Considering her education, training, work experience, and the practical application of her skills in conjunction with her consistent acceptance by courts — she has never been denied — as an expert witness in the field of child sexual abuse, we find that the trial judge did not abuse her discretion in qualifying Dr. Jackson as an expert in pediatrics, child sexual abuse, and delayed disclosure. Dr. Jackson was qualified to give opinion testimony in order to assist the jury in understanding the evidence and determining a fact at issue.
II
In this Part, we turn to address Mr. Hampton’s contention that the trial judge erred in overruling his objection to the opinion testimony given by Dr. Jackson. We apply the directives issued in State v. Foret and conclude that the trial judge made no legal error in the exercise of her discretion to permit Dr. Jackson’s expert testimony respecting delayed disclosure in child abuse cases.
A
Mr. Hampton specifically objected to Dr. Jackson’s opinion testimony about delayed disclosure or delayed reporting:
PROSECUTOR: Now, in your opinion, is it unusual for a child, who had been sexually abused to wait a period of time before disclosing the abuse?
DR. JACKSON: Yes [sic],
| «PROSECUTOR: And why is that?
DR. JACKSON: There’s also different factors that come in. Many times it might be due to naivety, if the child is really young, and they don’t realize that this isn’t happening with everybody else’s — maybe a relative, or whoever, and they might think that’s normal.
DEFENSE COUNSEL: Objection, Your Honor.
BY THE COURT: Overruled.
DR. JACKSON: They may think that that is normal. The next thing might be internal factors, where the child may have some type of shame, or fear, or they may have anticipation of negative consequences, if they disclose. They may feel like someone may not believe them. They may feel that they may be blamed for what’s happening. Another thing might be external factors, maybe that someone has threatened them, or told them something bad would happen to them, or their family, or someone, even maybe a parent might have said, if anybody ever did anything to you I *246 would kill them. So the child doesn’t want to say anything, because they’re afraid that their parent would end up in trouble. So there’s lots of different factors that come into play.
■ PROSECUTOR: And based on your experience, is it something that happens frequently?
DR. JACKSON: Yes.
|nPROSECUTOR: And would it be unusual for a child not to disclose everything the first time, and maybe disclose more the second time?
DR. JACKSON: Yes. There’s also different variants. Someone may have asked a question a certain way.... Also, depending on what the child initially may disclose, and someone’s reaction to what they initially disclosed ..., that can also have some — account for some variations. And the child may be fearful of repeating whatever it was initially. And that, again, it goes back to those other things I just said about, maybe being fearful of what’s going to happen to the parent. They feel comfortable saying ... portions of history.
At no point during the direct examination of Dr. Jackson did the prosecutor ask any question about the specifics of delayed disclosure dynamics vis-á-vis the circumstances of this case. Mr. Hampton’s counsel on cross-examination, however, did inquire as to Dr. Jackson’s opinion regarding the specifics of this case:
DEFENSE COUNSEL: When you evaluated [the child in this case], did you come up with anything specific to her that would explain her delayed disclosure?
|inDR. JACKSON: I said earlier about when she said that, when she was age nine [Mr. Hampton] told her that she was going to be in trouble, and he would also be in trouble. And she—
DEFENSE COUNSEL: And that was the first instance? DR. JACKSON: When she was age nine, yes. And she also said with regards to, because she was talking about when — because I asked her how did anyone find out about these things, and she said she wrote a note to her mom. And then there was some question about her mom, her thinking that her mom wouldn’t believe her.
DEFENSE COUNSEL: And the thought that her mom wouldn’t believe her came from [the child in this case], not from Mr. Hampton?
DR. JACKSON: That’s right. I believe that’s what she said, yes. I don’t know if there was anything that [Mr. Hampton] said with regard to that, but she just talked to me about herself thinking that.
Later, on re-direct examination, Dr. Jackson discussed the findings of one study, a phone survey, of women who self-reported as having been raped as a child. The study found that about twenty-five percent of women did not disclose their rape until adulthood or never disclosed at all, about fifty percent did not disclose for at least one year, and that the average time period prior to disclosure for that fifty percent was about five years. Dr. Jackson further testified, over objection, in response to the prosecutor’s questions that the rates differed between |nmales and females, that the study was only conducted with women, that delayed disclosure is pretty consistently a common feature for child sexual abuse, and that males are actually less likely than females to disclose their abuse. Notably, however, Dr. Jackson’s testimony on re-direct examination did not address the specifics of this case.
B
As discussed in Part I-A, ante, the Supreme Court has examined expert witness *247 testimony concerning “child sexual abuse accommodation syndrome,” one component of which is the delayed disclosure of the abuse. See Foret, 628 So.2d at 1124 (listing the principal factors or “dynamics” of child sexual abuse accommodation syndrome to include secrecy; helplessness; entrapment and accommodation; delayed, conflicted, and/or unconvincing disclosure; and retraction). For our present purposes, it is unnecessary to survey the far-reaching policy considerations underlying the rules announced in Foret as that case set forth a bright-line rule on expert testimony regarding delayed disclosure in child abuse cases.
“[S]uch opinion testimony as a determinant of a victim/witness’ credibility is not admissible.” Id. at 1129. An exception to this bright-line rule exists “only for the limited purpose of explaining, in general terms, certain reactions of a child to abuse that would be used to attack the victim/witness’ credibility.” Id. at 1131 (emphasis added). This explanation may be necessary to assist the jury in 1 ^understanding why “superficially bizarre” reactions, such as delayed reporting, occur. See id. at 1130.
The Supreme Court, in Foret, found an expert’s testimony to be his opinion regarding the victim’s credibility. See id. That expert “did not limit his testimony to general information about possible psychiatric explanations for the delay in reporting,” and, over objection, concluded that, “in his expert opinion, the witness was telling the truth on that occasion as to whether abuse had occurred.” Id. An expert assessment of a witness’ credibility is improper. See id.
Later, in addressing and excluding expert testimony about post-traumatic stress disorder (PTSD) for the purpose of substantively proving that sexual abuse occurred, the Supreme Court explicitly reaffirmed and applied its holding in Foret that “expert testimony of general characteristics that would explain delays in reporting, recantations, and omissions of details is admissible.” Chauvin, 02-1188 at p. 17, 846 So.2d at 708 (emphasis added).
C
From our review of Dr. Jackson’s testimony in response to the questions from the prosecutor, we conclude that she did not deviate from the limits established by Foret. Her testimony on direct and redirect examination presented her opinion only about general characteristics that' would explain a delay in reporting sexual abuse. Dr. Jackson’s opinion testimony only deviated from the confínes set forth in Foret in response to cross-examination by Mr. Hampton’s counsel for which he cannot now assign error. Nonetheless and most importantly, 11sDr. Jackson never expressed any opinion whatsoever about the credibility of the child in this case.
Similar to the expert witness in Friday, Dr. Jackson “testified very broadly about the general characteristics of sexual abuse victims, namely how such victims delay disclosure and some of the reasons why disclosure may be delayed, such as fear or shame.” 10-2309, p. 26, 73 So.3d at 931. Again, similar to the expert witness in Friday, based on Dr. Jackson’s training and experience in treating children who were victims of child abuse, “[i]t would not have been beyond her expertise to explain ... the basics of delayed disclosure.” 10-2309, p. 26, 73 So.3d at 932. Here, the trial judge did not err in overruling Mr. Hampton’s objections to the prosecutor’s questions for Dr. Jackson regarding whether it was unusual for children not to report sexual abuse immediately. See 10-2309, pp. 26-27, 73 So.3d at 932. See also State v. Myles, 04-434, p. 13 (La.App. 5 Cir. 10/12/04), 887 So.2d 118,126 (expert’s “tes *248 timony was properly limited to general behavioral characteristics of child abuse victims in disclosing alleged incidents, specifically why victims might recant or delay reporting”).
Ill
We turn now to explain our decision with respect to Mr. Hampton’s third assignment of error. Mr. Hampton argues that the trial judge abused her discretion by denying his motion for mistrial. During opening statements, the prosecutor made remarks that “thankfully we are not here for rape” to which the trial judge sustained Mr. Hampton’s objection. This statement was echoed in closing | ^arguments several times as well to which the trial judge overruled Mr. Hampton’s objection.[4] Mr. Hampton interprets these remarks as the prosecutor insinuating to the jury that Mr. Hampton was a rapist and that he would rape the child in this case or others in the future if the jury did not convict him. Mr. Hampton argues that these statements were so prejudicial in content and tone that they prevented him from receiving a fair trial.
The district attorney replies in written argument that the prosecutor never accused Mr. Hampton of committing rape or any other crime than that with which he was charged. The trial prosecutor, based upon the evidence, only sought to show that the nature of Mr. Hampton’s acts of indecent behavior were escalating in danger to the young girl. On the earliest occasion, the girl related, Mr. Hampton forced her to watch a pornographic movie with him while he masturbated and ejaculated into his hand. He told her to sit on him. When she refused and moved away from him, he attempted to grab her; she began to cry. At that point, according to the girl, Mr. Hampton ceased his advances. On the second occasion, while driving the young girl in her mother’s car, Mr. Hampton exposed his penis to her, masturbated, and ejaculated. When she jumped into the vehicle’s back seat, Mr. Hampton reached over the front seat and tried to touch her. On the third occasion, also in a car, Mr. Hampton offered to impregnate the girl, an underaged 1^relative, and exposed his penis, telling her to touch it. She refused, and Mr. Hampton reached over the front seat to touch her between her legs. He stopped when she threatened to jump from the moving car.
A mistrial shall be ordered upon motion of a defendant when the prosecutor, during closing arguments, refers directly or indirectly to “[ajnother crime committed or alleged to have been committed by the defendant as to which evidence is not admissible!.]” La.C.Cr.P. art. 770(2).[5] Fol *249 lowing our review of the entirety of the prosecutor’s closing arguments, we are satisfied that at no time did he refer to another crime committed or alleged to have been committed by Mr. Hampton. See State v. Norah, 12-1194, pp. 34-35 (La.App. 4 Cir. 12/11/13), 131 So.3d 172, 194 (citing State v. Sharp, 418 So.2d 1344, 1349 (La.1982)). Thus, Mr. Hampton was not entitled to a mandatory mistrial under the provisions of Article 770.
Having concluded that Mr. Hampton was not entitled, as a matter of law, to a mistrial under Article 770, we turn to consider whether the trial judge abused her discretion in finding that the prosecutor’s comments during closing argument were [1finot so prejudicial to Mr. Hampton as to warrant declaring a mistrial. See La.C.Cr.P. arts. 771, 775(5). “[A] trial judge has broad discretion in controlling the scope of the closing argument.” State v. Draughn, 05-1825, p. 44 (La.1/17/07), 950 So.2d 583, 614 (citing State v. Prestridge, 399 So.2d 564, 580 (La.1981)). Additionally, prosecutors are granted wide latitude in choosing their closing argument tactics. See id. (citing State v. Martin, 93-285, p. 18 (La.10/17/94), 645 So.2d 190, 200). The scope of permissible statements during closing arguments is “confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.” La.C.Cr.P. art. 774 (emphasis added). And “[t]he argument shall not appeal to prejudice.” Ibid.
For our purposes, when the prosecutor makes a remark or comment which is not within the scope of Article 770, and the remark is of such a nature that it might create prejudice against the defendant “in the mind of the jury,” upon the request of the defendant, “the court shall promptly admonish the jury to disregard the remark or comment....” La.C.Cr.P. art.-771. Often, the proper disposition in these cases is to admonish the prosecution rather than finding reversible error. See State v. Smith, 11-0091, p. 29 (La.App. 4 Cir. 7/11/12), 96 So.3d 678, 695. This is because a mistrial is a drastic remedy, see Draughn, 05-1825 at p. 44, 950 So.2d at 614, that is hesitatingly granted in Louisiana due to our deep-rooted trust in juror’s good sense and fair-mindedness. See State v. Ricard, 98-2278, p. 5 (La.App. 4 Cir. 1/19/00), 751 So.2d 393, 396.
117If, however, on motion of the defendant, the court is satisfied that an admonition is not sufficient to assure a fair trial for the defendant, the court may grant a mistrial. See La.C.Cr.P. art. 771. “Even when the prosecutor exceeds permissible bounds, a reviewing court should ‘not reverse a conviction unless thoroughly convinced that the argument influenced the jury and contributed to the verdict.’ ” State v. Norah, 12-1194 at p. 35, 131 So.3d at 194, (quoting State v. Casey, 99-0023, p. 17 (La.1/26/00), 775 So.2d 1022, 1036)
The prosecutor’s comments are repetitive and, in their repetitiveness, seem wholly unnecessary to arguing the facts of the actual charges sought to be proved against Mr. Hampton and somewhat condescending to the jurors’ ability to grasp the tangential point he was making about Mr. Hampton’s acts. But we do not find that the trial judge abused his discretion in finding the prosecution’s comments insufficiently prejudicial — if at all prejudicial — so as to undermine Mr. Hampton’s access to *250 a fair trial. These statements surely did not contribute to the verdict in this case.
IV
In this Part, we explain our resolution of an issue of particular concern.
A
The bill of. information in this ease charged Mr. Hampton with indecent behavior with a juvenile under the age of seventeen years old. The bill also identified by initials the victim and stated that there was an age difference of greater than two years between the under-aged victim and Mr. Hampton.
118The verdict of the jury, however, found Mr. Hampton guilty of “indecent behavior with a juvenile under the age of thirteen years old.” We identified this as a possible error patent and called for the parties to brief the matter as follows: “(1) whether there is an error patent and (2), if there is an error patent, whether the error is harmless or, if the error is not harmless, what would be the remedy (e.g., new trial, resentencing, etc.).”
Our initial concern was that La. R.S. 14:81 H(2) defined a crime of greater severity than that defined by La. R.S. 14:81 A(l). The latter, Subsection A(l), pertinently provides that indecent behavior with juveniles is the commission, with the intention or arousing the sexual desires of either person, of “[a]ny lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons.” Subsection A(l) also provides that “[ljack of knowledge of the child’s age shall not be a defense." Notably, La. R.S. 14:81 H(l) provides in pertinent part: “[wjhoever commits the crime of indecent behavior with juveniles shall be fined not more than five thousand dollars, or imprisoned with or without hard labor for not more than seven years, or both”. In contrast, Subsection H(2) provides in pertinent part: “[wjhoever commits the crime of indecent behavior with juveniles on a victim under the age of thirteen when the offender is seventeen years or older, shall be punished by imprisonment at hard labor for not less than two nor more than twenty-five years.” La. R.S. 14:81 H(2) (emphasis added).[6]
hiiB
“In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him.” La. Const, art. 1, § 13. The bill of information “shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged.” La.C.Cr.P. art. 464. And “[ijt shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated.” Ibid. But “[ejrror in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.” Ibid. “The court, on its own motion or on motion of the defendant, may require the district attorney to furnish a bill of particulars setting forth more specifically the nature and cause of the charge against the defendant.” La.C.Cr.P. art. 484. See also State v. Kennerson, 96-1518, pp. 6-7 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1372.
Here, the bill of information did not state the official citation of the statute. When Mr. Hampton filed a motion for a *251 bill of particulars requesting the statutory-citation that he was accused of violating along with any more specific, applicable subsection of the statute, the district attorney unhelpfully responded by referring the defendant to an attached police report.[7] The police report only identified the statutory citation as “R.S. 14:81” and identified no applicable subsection. Other than the title of the statute, the entirety of Section 81 consists only of subsections. Moreover, there is no mention in the attached police report that the victim was | gander the age of thirteen. Mr. Hampton then filed objections to the bill of particulars claiming it to be unsatisfactorily furnished. One of the objections was that the district attorney failed to specify upon which part or subpart of La. R.S. 14:81 that the prosecution was based. The record does not contain any indication that the district attorney filed supplemental or corrective pleadings or that Mr. Hampton pursued his complaint further.
The record does reflect, however, that the prosecution filed a pretrial motion in limine to exclude mention of the sentencing range in this case. Notably, the prosecutor argued in his motion that “the Code under the sentencing provision is at hard labor for not less than two years nor more than twenty-five years, and at least two years of the sentence shall be served without benefits.” In opposition to the prosecutor’s argument, Mr. Hampton’s counsel revealingly countered that she “would object [to] being prevented from including in voir dire any pertinent sentencing information pertaining to a mandatory minimum sentence, or the fact that there is one in this case, and this is not a probation eligible offense.” Of course, the only mandatory minimum sentence under Section 81 pertains to when the victim is under the age of thirteen; thus, Mr. Hampton was aware prior to trial of the nature of the charge.
The record also reflects that, after the prospective jurors were seated at the beginning of voir dire, the trial judge advised them that the defendant had been charged “with one count of indecent behavior with a juvenile under the age of thirteen.” Defense counsel did not indicate surprise or otherwise object to the judge’s identification of the charge.
12i The record, importantly, also reflects that, at the close of trial, the judge initially instructed the jury that “indecent behavior with a juvenile is the commission by anyone of any lewd or lascivious act ... upon the person of or in the presence of any child under the age of seventeen, who is more than two years younger than the defendant, with the intention of arousing or gratifying the sexual desires of either the defendant or the child.” There was a brief interruption at that moment during which the trial judge conferred at the bench with counsel. The judge then advised the jury of responsive verdicts: “All right. Ladies and Gentlemen, I caught a mistake in my jury instructions.... Responsive verdicts that you will actually have will be ... The first one should be, your first option should read guilty as charged of indecent behavior with a juvenile under the age of thirteen. That is what the defendant has been formally charged with....”[8] Not only did Mr. *252 Hampton’s counsel not object to this revised instruction, but, when the trial judge inquired of her, she affirmatively consented to it.
Based upon these developments, we, like the district attorney and Mr. Hampton’s appellate counsel in brief, conclude that Mr. Hampton was not misled to his prejudice by the defective bill of information and the deficient bill of particulars. Thus, a reversal of his conviction is not warranted. See La. C.C.P. art. 464.
C
We initially questioned whether the discrepancy between the crime charged in the bill of information and the verdict of the jury was an error patent. The parties, however, have considered the matter and concluded that, while reversal ofJ^Mr. Hampton’s conviction is unnecessary as the jury found proof beyond a reasonable doubt that Mr. Hampton committed indecent behavior with a juvenile under the age of seventeen years (the crime charged in the bill of information), the sentence must conform to the offense for which he was charged and convicted.
Ordinarily, we are to decide criminal cases under the party-presentation principle. See Greenlaw v. United States, 554 U.S. 237, 243-244, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008). Under that principle, we “rely on the parties to frame the issues for decision” and advance arguments that entitle them to relief. See id. at 243, 128 S.Ct. 2559. The scope of appellate review in criminal matters is highly restricted. See La. Const, art. 5, § 10(B). Only errors assigned by a party and errors patent “and no others shall be considered on appeal.” La.C.Cr.P. art. 920 (emphasis added). Having invited the parties to address the possible error patent, we see no reason to deviate from that party-presentation principle in the light of their agreement as to the appropriate remedy, which here is vacating the sentence imposed under Subsection 81 H(2) and remanding the matter for resentencing under Subsection 81 H(l).
We are reinforced in this view because the bill of information in this case averred that the offense occurred between July 1, 2006 and May 31, 2010. Notably, the victim testified without contradiction that her birthday is May 8, 1998. The victim thus turned thirteen years old on May 8, 2011. Subsection H(2) became effective, however, on August 15, 2006. Thus, while the victim was in fact under the age of thirteen during the entire period set forth in the indictment, Subsection H(2) itself was not in effect during the entire period. We are loath to let stand a punishment which is not clearly authorized under such circumstance. See State v. Carper, 47,409, pp. 7-9 (La.App. 2 Cir. 11/14/12), 107 So.3d 118, 123-125. See also State v. Lirette, 11-1167, p. 12 (La.App. 5 Cir. 6/28/12), 102 So.3d 801, 809 n. 12 (noting that Subsection H(2) “contains a special sentencing provision when the victim is under the age of 13”).
Therefore, we vacate Mr. Hampton’s previously imposed sentence of five years of imprisonment, two years of which must be served without the benefit of probation, parole, or suspension of sentence.
REMAND INSTRUCTIONS
On remand, the trial judge is to resen-tence Mr. Hampton under the provisions of La. R.S. 14:81 H(l). Any party aggrieved by the sentence imposed upon remand may appeal.
DECREE
The conviction of Michael Hampton for indecent behavior with a child under seventeen years old, a violation of La. R.S. 14:81 A(l), is affirmed. We vacate his *253 sentence and remand for resentencing under La. R.S. 14:81H(1).
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED.

. 628 So.2d 1116 (La. 1993).

. "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence.” Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

. We did detect another patent error in that the trial judge proceeded to sentencing without heeding the required twenty-four hour delay following the denial of a motion for new trial. See La.C.Cr.P. art. 873. But, as here, where the defendant is not appealing his sentence, we deem that error harmless. See, e.g., State v. Wheeler, 04-0953, pp. 8-9 (La.App. 4 Cir. 3/9/05), 899 So.2d 84, 89.

. The prosecutor's remarks made during closing arguments included: "We would be here for a different charge, and it would be a whole other set of facts.” "Luckily, once again, we’re not here for something worse.” "Luckily, again, we’re not here for something worse.” "Thankfully, we're not here for something worse."

. The full text of Article 770 provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
*249 An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.

. An additional condition of punishment under Subsection H(2) is that “[a]t least two years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.”

. On November 18, 2013, we ordered the district attorney to produce a copy of his answers to the bill of particulars. The prosecution responded with a copy of State's Answers to Defendant's Motion for Bill of Particulars and Discovery. The Answers consisted of fifty-nine responses, each of which reads: "See police report and court record; the State reserves the right to amend this answer.”

. The trial judge was inaccurate in that statement.