| STATE OF LOUISIANA | * | NO. 2018-KA-1045 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| JOSEPH PETERSON | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

CONSOLIDATED WITH:                   CONSOLIDATED WITH:

STATE OF LOUISIANA                   NO. 2018-KA-1046

VERSUS

JOSEPH PETERSON

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 14-2838, DIVISION "B"
Honorable Michael D. Clement,
* * * * * *
**JUDGE SANDRA CABRINA JENKINS**
* * * * * *

(Court composed of Judge Edwin A. Lombard, Judge Sandra Cabrina Jenkins, Judge Regina Bartholomew-Woods)

Charles Joseph Ballay, District Attorney
25TH JDC, PLAQUEMINES PARISH
102 Avenue G
Belle Chasse, LA 70037

Pamela S. Moran, Assistant Attorney General
1885 North Third Street
P. O. Box 94005
Baton Rouge, LA 70804—9005

      COUNSEL FOR STATE OF LOUISIANA/APPELLEE

Bruce G. Whittaker
LOUISIANA APPELLATE PROJECT
1215 Prytania Street, Suite 332
New Orleans, LA 70130

      COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**JANUARY 8, 2020**

The defendant, Joseph Peterson, appeals his conviction for three counts of aggravated incest, in violation of La. R.S. 14:78.1.[1] The defendant assigns two errors in this appeal, arguing that the evidence is insufficient to sustain the conviction and that the trial court erred in admitting certain evidence at trial. Upon review of the record and in light of applicable law and jurisprudence, we find no merit to his assignments of error. Accordingly, we affirm his conviction.

## PROCEDURAL BACKGROUND

On October 29, 2014, the defendant was charged by grand jury indictment with two counts of aggravated incest of the juvenile victim, A.A.,[2] between the dates of January 1, 2011 and October 15, 2012. On December 8, 2014, the defendant appeared for arraignment, in case number 14-02838, and pled not guilty to the two counts in the indictment.

---

[1] Effective June 12, 2014, La. Acts 2014, Nos. 177 and 602, repealed La. R.S. 14:78.1, "aggravated incest," and amended and reenacted La. R.S. 14:89.1, "aggravated crime against nature," to include the elements and penalties of the crime of aggravated incest. Thus, "aggravated incest" was redesignated "aggravated crimes against nature" under La. R.S. 14:89.1. "No change in the substantive proscriptions of Louisiana law were effected—only the placement of the conduct constituting the offense in the aggravated crime against nature offense—and the repeal of the offense of Aggravated Incest." *State v. Barbain*, 15-0404, p. 2, n. 3 (La. App. 4 Cir. 11/4/15), 179 So.3d 770, 773 (citation omitted).

[2] In this opinion, the initials of the victim, rather than the full name of the minor child, are used to protect and maintain the privacy of the minor child. *See* La. R.S. 46:1844(W)(1); Rule 5-2, Uniform Rules, Courts of Appeal.

1

On December 15, 2015, the defendant filed a motion in limine to exclude from evidence written pornographic stories discovered on the defendant's laptop computer, seized pursuant to a search warrant for the defendant's residence. The following day, the State filed a response to the defendant's motion to exclude, arguing that the evidence was admissible pursuant to La. C.E. art. 412.2.[3] That same date, the trial court held a hearing on the defendant's motion, but the trial court deferred ruling on the motion until trial. Shortly thereafter, on December 21, 2015, the defendant filed a notice of a request for a bench trial.

On May 30, 2017, the defendant was indicted on an additional count of aggravated incest of the juvenile victim, A.A., occurring between December 1, 2012 and August 1, 2013. Under case number 17-1835, the defendant appeared for arraignment on June 12, 2017, and pled not guilty to the charge in the second indictment.

The two cases, 14-2838 and 17-1835, were consolidated for the purposes of trial. The bench trial took place over three days, February 21 and 22, 2018, and March 9, 2018. On the last day of trial, the State sought to admit the written pornographic material, which was the subject of the defendant's prior motion in limine. Over the defendant's objection, the trial court admitted the evidence. At

---

[3] La. C.E. art. 412.2 provides as follows:

> A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
> B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide a reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.
> C. This Article shall not be construed to limit the admission or consideration of evidence under any other rule.

the conclusion of trial testimony and arguments, the trial court took the matter under advisement.

On March 28, 2018, the trial court rendered its verdict. Based upon the testimony and evidence presented at trial, the trial court found the defendant guilty of all three counts of aggravated incest, as follows: in case number 14-2838, (Count 1) aggravated incest by committing indecent behavior with a juvenile, in violation of La. R.S. 14:78.1(B)(1); (Count 2) aggravated incest by lewd fondling or touching, in violation of La. R.S. 14:78.1(B)(2); and in case number 17-1835, (Count 1) aggravated incest by lewd fondling or touching, in violation of La. R.S. 14:78.1(B)(2).

On August 8, 2018, the defendant appeared for sentencing. Prior to sentencing the defendant, the trial court noted that the victim in this case was a juvenile under the age of thirteen years at the time of the offenses; and, pursuant to the applicable statute, the sentence to be imposed would be not less than twenty-five years, without benefit of parole, probation, or suspension of sentence, and not more than ninety-nine years. The trial court then sentenced the defendant to the mandatory minimum sentence of twenty-five years at hard labor without benefit of parole, probation, or suspension of sentence, as to each count, to run concurrent.

The defendant now appeals his convictions. Before discussing the defendant's assignments of error on appeal, we review the facts and evidence presented at trial.

## STATEMENT OF FACTS

On October 19, 2012, the nine year-old victim, A.A., reported to her fourth grade teacher, Erin Cosse, that she was being sexually abused by her stepfather, the defendant. Ms. Cosse testified that A.A.'s school behavior had changed in the

preceding week and that she had asked A.A. if anything was wrong. At the end of the class day, A.A. told Ms. Cosse she was ready to tell her what was wrong and asked to speak with her in the hallway. A.A. then told Ms. Cosse that the defendant was sexually abusing her. Upon receiving this information, Ms. Cosse brought A.A. to the school nurse, Rebecca Amos.

Ms. Amos testified that Ms. Cosse brought A.A. to her office and stated only that A.A. had something she needed to tell her. Ms. Amos asked A.A. what was wrong, at which time A.A. reported that her stepfather, the defendant, was sexually abusing her. Ms. Amos asked A.A. to explain what she meant by that; and A.A. responded that the defendant showed her videos of men and women naked together and that the defendant "touches me with my clothes off." When asked how recently the touching had occurred, A.A. stated "last Monday." When asked if she had told anyone else, A.A. stated that she talked to her mother about "the situation", and her mother told her not to tell anyone outside the house about it. A.A. also said she had told her sister, Lexi, who told her to "stop saying that stuff." At that point, Ms. Amos contacted the Plaquemines Parish Sheriff's Office ("Sheriff's Office"), along with the school principal and counselor.

Captain Mark Plumer testified that on October 19, 2012, he was employed by the Sheriff's Office as captain of the Criminal Investigations Bureau. On that date, the office received a call from the Belle Chasse Primary School that a student had reported being sexually abused by her stepfather. Capt. Plumer, Detective Tiffanie Provenzano, and a patrol officer were immediately dispatched to the school to investigate the reported sexual abuse.

Upon arriving at the school, Capt. Plumer interviewed school personnel while Det. Provenzano spoke with A.A. and her mother. After gathering initial

4

statements at the school, the officers decided to relocate to the Sheriff's Office with A.A. and her mother to conduct further investigation. Based on the statements made by A.A., Capt. Plumer applied for a search warrant of the residence where A.A. lived with her mother and the defendant. Specifically, the search warrant sought computers, computer equipment, and any external hard drives, based on statements from A.A. that the defendant had shown her pornographic videos and images on his computer.

Capt. Plumer identified several photographs taken at the residence during the execution of the search warrant; he described photographs taken in the master bedroom that depicted sexual lifestyle magazines, a box of sex toys, and commercial pornographic videos. In regard to the computer equipment evidence, Capt. Plumer identified photographs showing the large Hewlett-Packard ("HP") laptop computer and an external hard drive that officers located in the defendant's work area and seized as evidence.

Captain Plumer stated that no family members were home during the execution of the search warrant. In fact, during that time, the defendant voluntarily presented himself at the Sheriff's Office. Capt. Plumer stated that the defendant denied having any knowledge as to why A.A. would make sexual abuse accusations against him and he volunteered to leave the family home. The defendant also volunteered to undergo a polygraph test. However, the polygraph exam did not go forward because, according to the polygraph examiner, a medical condition that caused twitching in the defendant's muscles could skew the results, making the test unreliable.

Tracey Brunetti testified that in October 2012, she was employed by the Child Advocacy Center in New Orleans as a child forensic interviewer. On

October 22, 2012, she conducted a videotaped interview with A.A., which was offered, introduced, and played during Brunetti's testimony. During that interview, A.A. informed her that the defendant forced her to watch videos on his computer. A.A. described one video showing two naked women and one naked man. A.A. stated that the defendant "constantly" showed such videos to her, and that the defendant also encouraged her to watch such videos on her smaller computer. A.A. further stated that she saw a photograph depicting her mother and the defendant having sex.

A.A. relayed to Brunetti that on the previous Monday or Sunday, which would have been October 15th or 14th, the defendant told her to lie next to him on the couch. She stated that, at that time, her mother was at the store and her sister was in her room. During this episode, the defendant put his hand on her vagina and placed her hand on his penis. The touching took place over their clothing.

Brunetti asked A.A. to indicate on anatomical drawings of the female and male bodies where the defendant had touched her body and where she had touched his body. On the female diagram, A.A. circled the body parts where the defendant had touched her, including her vagina, her breasts, and her belly button; and A.A. stated that the defendant touched these body parts both over and under her clothing. On the male diagram, A.A. placed stars on the male body parts, including his penis, chest, and buttocks, where the defendant forced her to touch him, both over and under his clothing.

Brunetti testified that during the interview A.A. cupped her hand and moved it up and down to show the type of manual stimulation she performed on the defendant's penis. A.A. stated that she had done this to the defendant more than once and that, after she did that, a white substance came out that the defendant

6

referred to as pus. In addition, A.A. stated that sometimes the defendant touched inside her vagina and sometimes he had her get on top of him and put his penis inside her vagina.

Detective Holly Hardin testified that she is employed by the Plaquemines Parish Sheriff's Office, assigned to the special victims unit. She described herself as "the juvenile detective, the sex-crime detective, and domestic-violence detective." In March 2017, she was contacted by the Attorney General's office and asked to coordinate a second forensic interview of A.A. as part of an investigation into allegations that the defendant had sexually abused A.A. again in 2013. Det. Hardin scheduled A.A. to undergo a forensic interview at the Child Advocacy Center in New Orleans.

At the time of the second videotaped forensic interview, on March 13, 2017, A.A. was fourteen years old and in eighth grade at Belle Chasse School. A.A. stated that, after the first series of sexual abuse incidents, the defendant returned to the family home and, approximately six months later, the abuse happened again. She stated that it occurred in the summertime of 2013, when she was ten or eleven years old. Once again, the abuse took place on the family couch and, this time, she was alone in the house with the defendant. A.A. stated that the defendant placed his hand on her vagina and he forced her to put her hand on his penis. She stated that the touching took place under their clothing. She described it as uncomfortable when he touched her. She recalled that this incident in the summertime might have been the last incident of sexual contact with the defendant, and that the defendant ultimately moved out of the family home and she had not seen him for two to three years.

Dr. Ellie Wetsman, who was accepted as an expert in child-abuse pediatrics, testified that she saw A.A. on November 7, 2012, after the first report of sexual abuse, but she did not perform a physical examination. Dr. Wetsman noted that a physical examination had been performed at Children's Hospital on October 19, 2012, and there was no physical evidence of sexual abuse. Dr. Wetsman explained that such a finding is not unusual in child sexual abuse cases because that part of the body "stretches" and most child abuse perpetrators are gentle because they do not want to cause physical injury.

Dr. Wetsman opined that most children do not report sexual abuse immediately after it happens. Dr. Wetsman explained that, often, the child does not know that what is happening is wrong, or the child is made to feel that she is at fault, or the child is threatened that if she tells something bad will happen; and, consequently, when a child victim of sexual abuse does report the incident, she will often report only a portion. Dr. Wetsman likened it to "test[ing] the waters" to see if the story is believed or to see if something will happen with her family. If the initial disclosure goes well, the child will gradually feel more comfortable telling the rest of the story. Dr. Wetsman also opined that it was not unusual for a child not to remember the details of each instance of abuse when she has been abused multiple times.

Dr. Wetsman did physically examine A.A. on March 22, 2017, after the second report of abuse. The results of that examination were normal. Dr. Wetsman also took a narrative from A.A., who informed her that she had been abused by the defendant once or twice since the last time Dr. Wetsman had interviewed her. A.A. stated that the abuse took place when she was alone in the house with the defendant and consisted of him touching her vagina and forcing her

to touch his penis. When asked whether the defendant had ever hurt her, A.A. answered affirmatively, explaining that he had tried to "stick" his penis in her vagina but that "it did not go in all the way."

A.A. herself also testified. At the time of the trial, she was fifteen years old and in ninth grade at Belle Chasse High School.[4] She testified that she was five years old when she first met the defendant and six or seven years old when the defendant married her mother and they lived together as a family.

A.A. recalled reporting to her fourth-grade teacher in October 2012, that she was being sexually abused by the defendant. She testified that, by the time she reported the abuse in October 2012, the abuse had been going on "for a couple of years." She admitted that she did not have a perfect memory of everything that had happened between her and the defendant. When asked how many times the abuse had taken place, she testified that it had occurred more than five times; but, she was unsure if it had happened more than ten times. When asked to explain what the defendant had done to her, A.A. testified that the defendant would touch her and make her touch him. She explained further that the defendant would touch her vagina under her clothes and he would make her touch his penis. The defendant also touched her vagina with his penis, but that occurred "only a couple of times."

A.A. testified that the defendant also made her watch pornography. She explained that he would "pull [the pornography] up on his computer and sit [the computer] in front of me and leave the room and tell me to watch it." She stated that he also showed her photographs of himself and her mother in sexual situations. While watching the pornography, the defendant would often have her change into

---

[4] Prior to her testimony, the parties stipulated that A.A. was competent to testify.

her robe with no clothes on underneath and he would touch his penis until "white stuff would come out."

After reporting the sexual abuse in October 2012, A.A. remembered that the defendant moved out of the house, but moved back in a few months later, in December 2012. She explained that she knew having the defendant move back in would make her mother and sister happy. She also recalled that the defendant had given the family a dog before he moved back in. At some point after the defendant moved back in with the family, he began sexually abusing her again. Although she could not recall the dates, she knew that it happened after he moved back in because she had the dog by this time. She stated that the defendant started touching her in the same ways that he had before he had moved out.

A.A.'s mother testified that she was shocked when A.A. told her that the defendant had showed her naked pictures on his computer, but she stated that she took no action because they were economically dependent on the defendant, so she advised A.A. to "hang tight." The mother admitted, however, that sometimes the defendant was alone in the house with A.A. The mother explained that A.A. had never personally told her that the defendant was abusing her, only that he had forced her to watch pornography on his computer.

The mother recalled being called to A.A.'s school on October 19, 2012, and thereafter, going to Children's Hospital so A.A. could be questioned and examined. At that point, the defendant moved out of the house, but, subsequently, moved back into the family home. Even after the initial report of problems, the mother stated that A.A. was sometimes left alone in the house with the defendant.

The mother stated that initially she did not want to believe her daughter's sexual abuse claims, but she realized that her daughter was not lying and had no

10

reason to lie because coming out with the truth caused them significant financial hardship. The mother admitted that she never witnessed the defendant sexually abusing A.A. or showing her pornography. However, she had witnessed the defendant viewing pornography on his computer and stated that sometimes she watched pornography with him in their bedroom.

The mother also testified that A.A. had told lies in the past, often about "minor things" such as cleaning her room, washing her clothes, taking a bath, or washing her hair.

Tran Buie Pogue, a digital forensic examiner with the Louisiana Attorney General's Office, testified that she became involved in the instant case in June, 2013. At that time she was given the defendant's laptop computer and external hard drive and told to look for "anything relating to sexual behavior, anything inappropriate in nature."

In performing her duties, Pogue obtained a printout of the computer's internet history. Pogue highlighted the entries which represented a pornographic website, xnxx.com. There were numerous highlighted entries and each entry, Pogue explained, represented a link and each link led to a story. There were additional links to xnxx.com on the defendant's smart phone.

Pogue proceeded to read out the titles of eighty-six pornographic stories that the defendant had accessed. Pogue explained that "user Joey Peterson" accessed these stories. However, Pogue admitted that if a third party had access to "user Joey Peterson's" password, then that person could have visited the sites.

Transcripts of eight of the pornographic stories were introduced into evidence. The transcribed stories had the following titles: "A Father's Love – Part Two," "Daddy Loves His Daughter," "Daddy and Daughter Amanda," "Amy and

Her Daddy Part 3," "Bonding with Daddy," "A Step-Daughter of Lust," "Ashlee's Young Life," and "Ashlee's Young Life 2." Pogue stated that she read the transcribed stories and that the titles fit the narratives; they all depicted "inappropriate sexual behavior … between an adult and a young child." However, Pogue's forensic examination did not reveal any child pornography on either the defendant's computer or smart phone.

Pogue also performed a forensic examination on A.A.'s computer. Pursuant to her examination, numerous links to the xnxx.com website were found.

A.A.'s sister, Lexi, was called by defense counsel to offer testimony. She testified that both she and A.A. initially had problems adjusting to having the defendant in their lives. Lexi stated that A.A. and the defendant fought "like cats and dogs," often getting into screaming arguments about A.A.'s messy room, about doing the dishes, and about hanging outside with her friends. Lexi believed that A.A. was sometimes scared of the defendant, even though A.A. never told Lexi she was afraid.

Lexi testified that A.A. never told her that the defendant was sexually abusing her. However, A.A. did tell Lexi that the defendant had shown her a rubber penis. Lexi estimated that she was told about the penis a week or so before A.A. reported the abuse to her teacher. Lexi admitted to initially doubting A.A.'s allegations, because A.A. was a little kid and would lie frequently about things like whether she cleaned her room or washed the dishes. Lexi stated that a part of her did not want to believe A.A. because they were living a great life.

Defense witness Alicia Mitchell, a supervisor with the Department of Children and Family Services, testified that her department investigates complaints of child sex abuse and that she was assigned to A.A.'s case. Mitchell stated that

12

following the department's initial evaluation in 2012, the allegations were deemed to be invalid, the case was closed, and the mother was sent a letter to this effect. Two years later, on December 5, 2014, the department undertook a second investigation and deemed the allegations to be valid. Mitchell explained that it was not until 2014 that the department received the narrative of an interview with A.A. in which A.A. described the sexual abuse.

During the course of the trial, a voluminous amount of evidence was introduced into the record, including the video recordings and transcripts of A.A.'s forensic interviews, A.A.'s medical records, computer forensic examinations and reports of the defendant's laptop and A.A.'s mini-computer, numerous photographs, and printouts of the pornographic stories found on the defendant's computer.

## DISCUSSION

Defendant raises two assignments of error on appeal, as follows:

1. The trial court erred in denying the defendant's motion in limine to exclude written materials seized from defendant's computer, as those materials were protected by the First Amendment and were more prejudicial than probative.

2. The evidence presented at trial was insufficient to support the verdict beyond a reasonable doubt.

We address the defendant's second assignment of error first, in accordance with Louisiana jurisprudence that "[w]hen issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence." *State v. Brazell*, 17-0032, p. 9 (La. App. 4 Cir. 4/18/18), 245 So.3d 15, 26 (citations omitted).

13

*Sufficiency of Evidence*

In evaluating the sufficiency of the evidence to sustain a conviction, this Court applies the standard of review set forth by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S.Ct. at 2789. In applying this standard, this Court must consider the record as a whole, as the rational trier of fact would do. *Brazell*, 17-0032, p. 10, 245 So.3d at 26-27. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, even one witness's testimony, if believed by the rational trier of fact, is sufficient to support a factual conclusion. *State v. Alverez*, 13-1652, p. 6 (La. App. 4 Cir. 12/23/14), 158 So.3d 142, 148 (citing *State v. Robinson*, 02-1869, p. 16 (La. 4/14/04), 874 So.2d 66, 79); *see State v. Summers*, 10-0341, p. 7 (La. App. 4 Cir. 12/1/10), 52 So.3d 951, 955 ("The testimony of the victim alone is sufficient to establish the elements of the offense.").

The reviewing court is "not permitted to second guess the rational credibility determination" of the trier of fact, nor is it the function of the appellate court to reweigh the evidence. *State v. Kelly*, 15-0484, p. 3 (La. 6/29/16), 195 So.3d 449, 451. The determination of witness credibility is a question of fact within the sound discretion of the trier of fact that shall not be disturbed unless clearly contrary to the evidence. *Id.* (citing *State v. Vessell*, 450 So.2d 938, 943 (La. 1984). If, upon review of the record, the appellate court concludes that rational triers of fact could disagree as to the interpretation of the evidence, then the rational trier's view of all the evidence most favorable to the prosecution must be adopted. *State v. Miner*,

14

14-0939, p. 6 (La. App. 4 Cir. 3/11/15), 163 So.3d 132, 136. "Only irrational decisions to convict by the trier of fact will be overturned." *State v. Winston*, 11-1342, p. 8 (La. App. 4 Cir. 9/12/12), 100 So.3d 332, 337 (citing *State v. Mussall*, 523 So.2d 1305, 1310 (La. 1988).

Thus, in this case, the relevant question for this Court to determine the sufficiency of the evidence is whether, after viewing the evidence in this case in the light most favorable to the State, a rational trier of fact could have found the essential elements of the crime of aggravated incest, La. R.S. 14:78.1, beyond a reasonable doubt. At the time the offenses occurred, La. R.S. 14:78.1 defined aggravated incest, in pertinent part, as follows:

> A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
>
> B. The following are prohibited acts under this Section:
>
> (1) Sexual intercourse, sexual battery, second degree battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile or a person with a physical or mental disability, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
>
> (2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.

In this case, the trial court found the defendant guilty under La. R.S. 14:78.1(B)(1) by indecent behavior with the juvenile A.A., and under La. R.S. 14:78.1(B)(2) by lewd fondling or touching of A.A. Indecent behavior with a juvenile, as an offense under La. R.S. 14:81, is defined as follows:

A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:

(1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the persons. Lack of knowledge of the child's age shall not be a defense; or

(2) The transmission, delivery or utterance of any textual, visual, written, or oral communication depicting lewd or lascivious conduct, text, words, or images to any person reasonably believed to be under the age of seventeen and reasonably believed to be at least two years younger than the offender. It shall not be a defense that the person who actually receives the transmission is not under the age of seventeen.

The testimony adduced at trial indicated that the victim, A.A., was nine years old in October 2012, when she first reported being sexually abused by the defendant, her stepfather, as verified by the marriage certificate reflecting that he and A.A.'s mother were married on July 23, 2008. Thus, the record established the requisite relationship and age difference between the defendant and A.A., under La. R.S. 14:78.1(A).

Further, A.A. provided testimony describing lewd fondling and touching by the defendant of her genitals and being directed by the defendant to touch his genitals with the intention of arousing and gratifying him sexually. A.A. testified that this abuse began "a couple of years" prior to and until her first reporting in October 2012, and that the abuse occurred again when the defendant returned to live in the residence in December 2012, through the summer of 2013. A.A. testified that the abuse occurred more than five times. This testimony, if believed by a rational trier of fact, is sufficient to establish the elements of La. R.S. 14:78.1(B)(2).

In addition to the sexual abuse by lewd fondling and touching, A.A. testified that the defendant often made her watch pornography on his laptop computer and showed her images of him and her mother naked, in sexual situations. Additional testimony from the mother, stating that she and the defendant would watch pornography on his laptop computer, and from Pogue, the digital forensic examiner, stating that pornographic websites and pornographic written materials were accessed and downloaded by "user Joey Peterson" to his laptop computer, provided corroboration of A.A.'s testimony. This testimony, if believed by a rational trier of fact, is sufficient to establish the elements of indecent behavior with juveniles, under La. R.S. 14:81(A)(2), and, moreover, the elements of aggravated incest, under La. R.S. 14:78.1(B)(1).

Several more trial witnesses provided testimony regarding A.A.'s reports of the sexual abuse by the defendant, including her teacher, the school nurse, the forensic interviewer, and the pediatrician who examined her. Although the defendant argues that A.A.'s testimony was uncorroborated by the results of her physical examination and was internally inconsistent regarding the exact dates of the abuse, the testimony of several witnesses reflected the consistency of A.A.'s statements regarding the abuse by the defendant. Moreover, Dr. Wetsman testified that it is not unusual for the physical examination of a child sex abuse victim to be "normal" and for the child who has been sexually abused multiple times to have difficulty recalling the details of each instance of sexual abuse.

In consideration of all the witness testimony and evidence introduced at trial, the trial court concluded that the sexual abuse of A.A. by the defendant had occurred as reported and that all essential elements of the charged offenses of aggravated incest, under La. R.S. 14:78.1(B)(1) and (2) were established. Upon

17

our review of the whole record, and viewing the evidence in the light most favorable to the prosecution, we find that the evidence was sufficient to convince the trial court that all of the essential elements of the offense of aggravated incest had been proved beyond a reasonable doubt.

### *Admissibility of Evidence*

We now turn to the defendant's first assigned error, arguing that the trial court erred in denying his motion to exclude from trial the written pornographic stories, seized from the defendant's computer. The defendant asserts that the trial court committed reversible error in admitting the pornographic stories into evidence at trial.

Prior to trial, the defendant filed a motion to exclude written pornographic stories that were discovered on his laptop computer, seized pursuant to the search warrant of the residence. In his motion, the defendant admitted that the pornographic stories depict illegal sexual abuse of minors, but he asserted that none of the materials seized from his computer constituted illegal child pornography and that the stories constituted protected free speech under the First Amendment of the United States Constitution. Further, the defendant argued that such evidence was inadmissible character evidence under La. C.E. art. 404(B)(1), because his possession of the stories is not probative of any criminal acts and would be used only to attack his character and credibility. Finally, the defendant argued that the evidence must be excluded ultimately under La. C.E. art. 403, because the danger of unfair prejudice substantially outweighed any probative value of the evidence as it relates to the charged offenses.

In response, the State argued that the written pornographic stories, which specifically depicted sexual abuse of minor females by their fathers/stepfathers,

18

were admissible under La. C.E. art. 404(B)(1), as proof of the defendant's intent and motive to sexually abuse his stepdaughter, and under La. C.E. art. 412.2, as evidence indicating the defendant's lustful disposition toward minor females.

After a lengthy hearing on the defendant's motion, the trial court deferred ruling on the admissibility of the pornographic stories until trial. Subsequently, during the trial testimony of Pogue, the digital forensic examiner, the trial court admitted eight of the stories found on the defendant's computer into evidence, over the defendant's objection. The record indicates that the trial court admitted the evidence under La. C.E. art. 412.2.[5]

On appeal, a trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard and will not be overturned absent a clear abuse of discretion. *State v. Klein*, 18-0022, p. 19 (La. App. 4 Cir. 8/22/18), 252 So.3d 973, 985; *State v. Wright*, 11-0141, pp. 10-11 (La. 12/6/11), 79 So.3d 309, 316.

Generally, all relevant evidence is admissible at trial; that is, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La. C.E. arts. 401, 402. Evidence that is not relevant is not admissible. La. C.E. art. 402. Additionally, evidence, although relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." La. C.E. art. 403. When an accused argues that certain evidence should be excluded, pursuant to La.

---

[5] In ruling, the trial court stated that the evidence was being admitted under "[La. C.E. art.] 412." In consideration of the motion and arguments presented, it is apparent from the record that the trial court was referring to La. C.E. art. 412.2, regarding the admissibility of similar crimes, wrongs, or acts in sex offense cases. *See infra* n. 2.

C.E. art. 403, because the probative value is substantially outweighed by the danger of unfair prejudice, a trial court is vested with much discretion in determining whether the probative value of relevant evidence is substantially outweighed by the potential prejudicial effect. *State v. Dove*, 15-0783, p. 29 (La. App. 4 Cir. 5/4/16), 194 So.3d 92, 112.

However, the trial court may not admit evidence of other crimes, wrongs, or acts committed by the defendant for purposes of showing the defendant as a man of bad character who has acted in conformity therewith. La. C.E. art. 404(B)(1); *State v. Rose*, 06-0402, p. 12 (La. 2/22/07), 949 So.2d 1236, 1243. Our jurisprudence recognizes that, in general, evidence of other crimes, wrongs, or acts committed by the defendant poses a "substantial risk of grave prejudice to the defendant." *Klein*, 18-0022, p. 18, 252 So.3d at 985; *State v. Williams*, 96-1023, p. 30 (La. 1/21/98), 708 So.2d 703, 725; *State v. Prieur*, 277 So.2d 126, 128 (La. 1973). However, La. C.E. art. 404(B)(1) provides exceptions to the general rule of inadmissibility, when the evidence sought to be admitted provides proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or "when the evidence relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." *Klein*, 18-0022, p. 18, 252 So.3d at 985.

In addition, as recognized by Louisiana jurisprudence, a further exception to the general rule against the admission of other crimes, wrongs, or acts evidence was created by the Louisiana Legislature through the enactment of La. C.E. art. 412.2, which provides:

A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of

20

the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

In *State v. Wright*, the Louisiana Supreme Court recognized that "Article 412.2 was enacted to loosen restrictions on 'other crimes' evidence, and to allow evidence of 'lustful disposition' in cases involving sexual offenses." 11-0141, p. 13 (La. 12/6/11), 79 So.3d 309, 317. "Thus, evidence of defendant's other acts which involve sexually assaultive behavior or acts which indicate his lustful disposition towards children may be admissible." *Wright*, 11-0141, p. 11, 79 So.3d at 316 (holding other crimes/acts evidence admissible under La. C.E. art. 412.2 as it demonstrated the defendant's propensity for sexual activity with adolescents where he held a position of authority, and where the adolescent children were in his household).

In *State v. Farrier*, 14-0623 (La. App. 4 Cir. 3/25/15), 162 So.3d 1233, the defendant was convicted of sexual battery of an unrelated, six-year old girl who resided with him in the same home; on appeal, he argued that the trial court erred in admitting a jailhouse telephone recording, in which he made statements about watching child pornography, because it was substantially more prejudicial than probative under La. C.E. art. 403. In reviewing the admissibility of the evidence, this Court discussed the applicability of La. C.E. art. 404(B)(1) and the exception within La. C.E. art. 412.2 to the facts of the case, stating as follows:

> Unquestionably, Mr. Farrier has been charged with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense. As charged here, the specific offense for which Mr. Farrier was on trial required the prosecution to prove beyond a reasonable doubt that Mr. Farrier intentionally touched the anus or genitals of [victim] without her consent. *See* La. R.S.

21

14:43.1A(1). And, of course, Mr. Farrier is an adult male, and [victim] was six years old at that time.

Here, the recording speaks directly to Mr. Farrier's lustful disposition towards children. Notably, in this conversation, Mr. Farrier does not tell his listener that the allegations of him watching child pornography are false; he is loudly silent about the truth of the allegations and instead cannot fight "this" and hopes for leniency as "a first offender." Mr. Farrier's statements are also relevant to his prosecution to confirm [victim's] videotaped forensic interview and testimony at trial that Mr. Farrier would show her child pornography and then have [victim] imitate what was done on the video.

*Farrier*, 14-0623, pp. 14-15, 162 So.3d at 1243. Under the facts of the case, given that the defendant's other acts/statements indicated a lustful disposition toward children, this Court found that the trial court did not abuse its discretion in finding that the evidence did not warrant exclusion under La. C.E. art. 403 and allowing the admission of the jailhouse call. *Id.*

Also, in *State v. Klein*, *supra*, this Court found no abuse of discretion in the trial court's admission of other crimes evidence, under La. C.E. art. 412.2, at the trial of the defendant charged with multiple counts of child pornography. The defendant argued that the trial court erred in allowing testimony from his adult children that they were sexually abused by the defendant as young children. The defendant argued that, because the charged offenses of possession of child pornography are more passive and less violent than the sexual abuse described in the testimony of his children, any probative value of the testimony was substantially outweighed by the prejudicial effect. This Court disagreed; in particular, this Court noted that "[t]he behavior depicted on the videos is strikingly similar to the acts described by [defendant's adult children]." *Klein*, 18-0022, p. 21, 252 So.3d at 986.

In this case, as admitted by the defendant, the written stories depict illegal sexual abuse of minor females by their fathers or stepfathers. While we acknowledge that the defendant's possession of written stories depicting sexual abuse is not illegal, the acts and behavior depicted within the stories bare a noticeable similarity to the charged offenses in this case. His possession of these pornographic stories involving minor children indicates, generally, a lustful disposition towards children and, in particular, sexual inclinations towards young females living with or related to him. Thus, under the facts and circumstances of this case, the evidence would fall within the exception provided by La. C.E. art. 412.2, as found by the trial court.

We also do not find the evidence to be more prejudicial than probative under La. C.E. art. 403. Regarding the balancing between the probative value of evidence and the danger of unfair prejudice, the Louisiana Supreme Court has stated, "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from the proof specific to the offense charged." *Wright*, 11-0141, p. 15, 79 So.3d at 318 (quoting *Rose*, 06-0402, p. 13, 949 So.2d at 1244). In this case, the evidence admitted was relevant and probative to show the defendant's lustful disposition toward children, in particular a stepdaughter, in scenarios similar to those described by A.A. in her forensic interviews and in her testimony. Thus, we do not find this evidence to be extraneous. We also do not find that the admission of this evidence would "lure the factfinder" away from its duty to find proof beyond a reasonable doubt specific to the charged offense of aggravated incest of A.A. *See id.* Lastly, in consideration that this was a bench trial as requested by the defendant, we note that the trial judge is "trained in the

23

law and is able to disregard irrelevant and possibly prejudicial matter." *State v. Crothers*, 278 So.2d 12, 15; *see State v. Herrin*, 562 So.2d 1, 7 (La. App. 1st Cir. 1990).

Based on our review of the evidence introduced at trial, in light of the applicable statutes and jurisprudence, we do not find that the trial court abused its discretion in allowing the written pornographic stories discovered on the defendant's computer to be admitted into evidence under La. C.E. art. 412.2. In addition, we do not find the trial court abused its discretion in finding the probative value of the evidence outweighed its prejudicial effect. This assignment of error has no merit.

## CONCLUSION

For the foregoing reasons, we find no merit in the defendant's assignments of error raised on appeal. Accordingly, we affirm the defendant's conviction and sentence for three counts of aggravated incest.

**AFFIRMED**